**EXHIBIT C**

```
                                                            1

 1                                      VOL: I   PAGES:  1 - 72
                                        EXHIBITS:  1 - 2
 2                   UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
 3                        (EASTERN DIVISION)

 4
     ---------------------------------x Chapter 1
 5                                     No. 02-12873(PJW)
                                       Jointly Administered
 6   CTC COMMUNICATIONS GROUP, INC.,
     CTC COMMUNICATIONS CORP.,
 7   CTC COMMUNICATIONS OF VIRGINIA, INC.,
     and CTC COMMUNICATIONS LEASING CORP.,
 8                   Debtors,
     ---------------------------------x
 9   CTC LITIGATION TRUST.,
                     Plaintiff,
10   vs.                                CA No.  04-CV-10881
                                                (RWZ)
11
     FREDERIC F. KUNZI,
12                   Defendant.
     ---------------------------------x
13   CTC LITIGATION TRUST.,
                     Plaintiff,
14   vs.                                CA No.  04-CV-10883
                                                (RWZ)
15
     THOMAS FABBRICATORE,
16                   Defendant.
     ---------------------------------x
17
             Deposition OF JOHN D. PITTENGER, a
18   witness called on behalf of the Defendants,
     taken pursuant to notice before Kathleen L.
19   Good, Registered Professional Reporter and
     Notary Public in and for the Commonwealth of
20   Massachusetts, at the offices of Glickman &
     Turley, 250 Summer Street, Boston,
21   Massachusetts, on Tuesday, April 4, 2006, at
     10:11 a.m.
22
             BRAMANTI & LYONS COURT REPORTING, INC.
23              REGISTERED PROFESSIONAL REPORTERS
          92 STATE ST., 8TH FLOOR, BOSTON, MA 02109
24         TEL:  617.723.7321 / FAX:  617.524.5153
                    www.bramanti-lyons.com
```

1  A.  I do not know if he did. I think it would be a
2      matter of public record if he did.
3  Q.  You're the chief financial officer and I take it
4      you would know whether there were, for instance,
5      you know, there were loans given to cover the
6      margin debts. I think you might have some
7      knowledge of whether --
8  A.  It's the individual's responsibility to file any
9      type of Form 4 that was required by the SEC and
10     to anticipate selling or to actually record the
11     selling of shares.
12         The loans were my responsibility as CFO
13     of the company.
14 Q.  What were the purpose of those loans?
15 A.  I think there were a variety of purposes.
16 Q.  Tell me what they were.
17 A.  The vast majority of them were to cover margin
18     calls on the stock.
19 Q.  Do you have any knowledge as to why the officers
20     took margin loans as opposed to just selling
21     stock?
22 A.  Well, I believe that they thought the stock was
23     depressed at the time and to sell at that price
24     would have been at a value lower than the stock

1     involved in the company issuing loans to cover
2     margin debt on company stock?
3  A.  On a regulatory basis?
4  Q.  Was there any regulatory issues that you
5     discussed with Mr. Glass?
6  A.  Again, I think we viewed this as loans to
7     individuals where those proceeds of loans were
8     being used to cover margin debt.
9  Q.  Did you have any discussion with Mr. Glass as to
10    whether there was any securities regulatory
11    issues involved with that?
12  A.  I do not.
13  Q.  You did not?
14  A.  I do not recall any conversations.
15  Q.  Did you have any concerns?
16  A.  From a regulatory viewpoint?
17  Q.  Yes.
18  A.  No, I did not.
19  Q.  I'm going to show you another -- I think this
20    all goes together. If you could take a look at
21    these documents and see if I'm correct.
22        (Pause.)
23  A.  Okay.
24  Q.  Is that all together, the documents, do these

1   had expressed a statement that the loans would
2   not have to be repaid?
3           MR. HARRIS:  Could we have that read
4   back?
5           MR. GLICKMAN:  Let me try it again.
6   Q.  Are you aware of any conversations between
7   anyone in senior management and any of the
8   recipients of the loans to the effect that these
9   loans would not have to be repaid?
10  A.  No.  In fact, the vast majority of them were
11  repaid.
12  Q.  Which loans were repaid?
13  A.  I would have to specifically look at the detail,
14  but Robert Fabbricatore's were repaid, Stephen
15  Milton's were repaid, Tony Vermette's were
16  repaid.
17  Q.  Were Stephen's loans repaid in total before the
18  bankruptcy?
19  A.  I'm not sure.
20  Q.  May have been after the bankruptcy?
21  A.  Again, I'm not sure as to the date.
22  Q.  Did you ever talk to Frederic Kunzi about
23  repayment?
24  A.  Again, I don't recall speaking with any of the

60

1    not go to the company for the loans.
2        MR. GLICKMAN: I have no further
3    questions.
4        MR. HARRIS: I just have a couple of
5    follow-up questions. I won't take up too much
6    more time.
7                CROSS-EXAMINATION
8    BY MR. HARRIS:
9  Q. Again, for the record, my name is Robert Harris.
10     I represent the CTC Litigation Trust. We are
11     the plaintiff in both of the actions under which
12     this deposition is taking place. I appreciate
13     your coming down today and I beg your indulgence
14     for a few minutes more.
15         Just to clarify your previous testimony,
16     your role with respect to the margin, with
17     respect to the promissory notes were to ensure
18     that the notes were distributed and executed; is
19     that correct?
20 A. That's correct.
21 Q. And Mr. Glass, general counsel, outside
22     corporate counsel of CTC, was specifically
23     charged with the responsibility for securing
24     collateral for the margin loans; is that right?

1  A.  Absolutely.
2  Q.  Now, are you aware of any arrangements whereby
3      the recipients of the loans -- strike that.
4      I'll do it individually.
5          Are you aware of any arrangements
6      whereby Mr. Kunzi would be relieved of his
7      obligation to repay the notes to CTC?
8  A.  No, I do not.
9  Q.  Did you have any conversations with Robert
10     Fabbricatore about Mr. Kunzi's being relieved of
11     his obligation to repay his notes to CTC?
12 A.  No, I did not have any conversations on that
13     subject.
14 Q.  So it was always your understanding that
15     Mr. Kunzi was obligated to repay whatever was
16     due and owing under his promissory notes?
17 A.  Yes.
18 Q.  With respect to Mr. Fabbricatore, did you have
19     any conversation with Robert Fabbricatore about
20     Tom Fabbricatore being relieved of his
21     obligation to repay any monies due under the
22     promissory notes?
23 A.  No, I did not.
24 Q.  Did you have any conversations with Tom

1      Board of Directors had any knowledge or
2      information relating to whether Frederic Kunzi
3      was relieved of any obligation to pay on those
4      promissory notes?
5  A.  I am not aware of any.
6  Q.  You did participate in parts of Board of
7      Directors meetings; is that correct?
8  A.  That's correct.
9  Q.  Based on your participation in those meetings or
10     other conversations, it was your understanding,
11     was it not, that the board expected these notes
12     to be repaid?  Is that correct?
13 A.  That's correct.
14 Q.  And that was consistent with your understanding
15     as well; is that correct?
16 A.  It's consistent with how we booked those entries
17     on our balance sheet as a current asset, yes.
18 Q.  That the company fully expected to be repaid by
19     each of the individuals?
20 A.  That's correct.
21 Q.  In fact, the vast majority, as you said, of the
22     individuals did, in fact, repay their
23     obligations?
24          MR. GLICKMAN:  Objection.

| | | |
|---|---|---|
| 1 | Q. | Was that not your testimony earlier? |
| 2 | A. | That was my testimony that the vast majority of |
| 3 | | the dollars, vast majority of the dollars were |
| 4 | | paid back. |
| 5 | Q. | For example, Robert Fabbricatore, he had the |
| 6 | | largest obligation; is that correct? |
| 7 | A. | That's correct. |
| 8 | Q. | And he, in fact, repaid his obligation? |
| 9 | A. | He repaid all but the final, I think it was |
| 10 | | $30,000 that was associated with expenses that |
| 11 | | had not been turned in upon his departure from |
| 12 | | the company, so I think officially, on the |
| 13 | | books, there's probably still a small amount. |
| 14 | | But 95 percent of the amount was paid back, yes. |
| 15 | Q. | And do you recall as to what his overall amount |
| 16 | | was? |
| 17 | A. | I believe it was in excess of $4 million. |
| 18 | Q. | And I believe you testified that Mr. Milton |
| 19 | | repaid the vast majority of his obligations? |
| 20 | A. | That's correct. |
| 21 | Q. | And Mr. Vermette as well? |
| 22 | A. | That's correct. |
| 23 | Q. | As best you know, Tom Fabbricatore had not |
| 24 | | repaid all of his obligations? |