UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 02-12873 (PJW) |
| CTC COMMUNICATIONS GROUP, INC., | ) | |
| CTC COMMUNICATIONS CORP., | ) | |
| CTC COMMUNICATIONS OF VIRGINIA, INC., | ) | (Jointly Administered) |
| and CTC COMMUNICATIONS LEASING | ) | |
| CORP. | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | AP No. 03-01494 |
| | ) | |
| CTC LITIGATION TRUST., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | No. 04-CV-10881 (RWZ) |
| FREDERIC F. KUNZI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF CTC LITIGATION TRUST'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56.1, Plaintiff, the CTC Litigation Trust ("the Trust"), by and through its undersigned counsel, hereby submits the following statement of undisputed material facts of record in support of its Motion For Summary Judgment filed simultaneously herewith:

1. CTC is a publicly traded company operating as an integrated communications carrier offering voice, data, Internet, and video services in the northeastern United States. See Complaint, ¶ 4.

1

2. The Defendant was employed by CTC as the Vice President and Chief Technology Officer. See Excerpts of Deposition Transcript of Frederic F. Kunzi ("Kunzi Tr."), a true and accurate copy of which is attached as Exhibit A to the Affidavit of Robert L. Harris ("Harris Aff."), p. 17.

3. During his tenure with CTC, the Defendant supervised as many as 150 employees and reported directly to Mr. Fabbricatore, the Chief Executive Officer ("CEO") and Chairman of CTC. See Kunzi Tr., pp. 22-23.

4. The Defendant was laid off on October 1, 2002, two (2) days before CTC filed its chapter 11 bankruptcy petition. See id. at p 26.

5. At the time of his termination, the Defendant's annual salary was approximately $185,000. See id.

6. Like many officers and employees of CTC, the Defendant received shares of CTC common stock as part of his total compensation package. See id. at p 25.

7. The Defendant first acquired CTC stock in or around 1999 and owned as many of 125,500 shares during the course of his employment with the Company. See id. at p 27

8. In or around 2000, the Defendant, among other officers and employees of CTC, obtained margin loans from Paine Webber using their stock as collateral. See id. at p. 33; see also Affidavit of John Pittenger ("Pittenger Aff."), at ¶ 3.

9. At the time that certain of these Margin Loans were obtained, the market price of CTC's stock was in excess of $35.00 per share. See id. at ¶4. However, the market price of high tech and telecommunications stocks, including CTC's stock, fell dramatically in the summer and fall of 2000. See id.

10. In November 2000, as the market price of CTC's common stock fell below $10.00, the officers and employees began to receive demands from Paine Webber to pay down the loans or to put up additional CTC stock or other collateral to secure repayment of their Margin Loans (the "Margin Calls"). See id.; see also Kunzi Tr., p. 34; Excerpts of Deposition Transcript of Leonard Glass ("Glass Tr."),[1] a true and accurate copy of which is attached as Exhibit B to the Harris Aff., at pp. 111-112.

11. CTC estimated that the aggregate number of shares that would have been sold to satisfy the margin calls would have been approximately 400,000 – 500,000 shares. See Pittenger Aff. at ¶6.

12. Given the fact that CTC's average day trading volume at the time was approximately 50,000 shares, selling over 400,000 shares on the market would have driven CTC's stock price down even further, which could have necessitated the sale of even more shares to satisfy the margin calls. See id.

13. To enable its officers and employees to avoid the rapid sale of their CTC stock at low prices to satisfy margin calls, CTC's Board of Directors (the "Board") authorized CTC's making of short-term loans to the officers and employees in order to cover margin calls and avoid a situation where insiders would have to quickly sell a significant amount of shares (the "Margin Call Loans"). See Pittenger Aff. at ¶ 8; see also Glass Tr., p. 113; Excerpts of Deposition Transcript of John Pittenger ("Pittenger Tr."), a true and accurate copy of which is attached as Exhibit C to the Harris Aff., at pp. 28, 40.

---

[1] Mr. Glass was deposed in connection with another civil action commenced by the Trust, CTC Litigation Trust v. Leonard Glass and the Law Offices of Leonard R. Glass, P.A., Adv. Pro. No. 04-55756, in the United States Bankruptcy Court for the District of Delaware.

14. The Margin Call Loans made by CTC to its officers and employees totaled $6,375,135. See Pittenger Aff. at ¶ 8.

15. The Margin Call Loans were disclosed by CTC in its Form 10-K filed with the Securities and Exchange Commission ("SEC") for the nine (9) month transition period ending December 31, 2000 ("Form 10-K"). See Pittenger Aff., Exhibit B.

16. The vast majority of the Margin Call Loans were in fact repaid by the officers and employees to CTC. See id, at ¶¶ 9-15; see also Pittenger Tr., pp. 46, 64-65.

17. Kunzi, however, never repaid his loan obligations.

18. CTC charged Leonard Glass, outside corporate counsel for the company, with primary responsibility for obtaining promissory notes to memorialize the officers and employees' obligation to repay CTC for the Margin Call Loans. See Glass Tr., p. 114.

19. The Defendant, in particular, executed ten (10) promissory notes in favor of CTC (the "Notes"). A true and accurate copy of the Kunzi Notes are attached to the Harris Aff. as Exhibit C.

20. The Defendant acknowledged and authenticated his signature on each of the Notes and understood the legal significance of his signature. See Kunzi Tr., pp. 53, 58

21. Each of the Notes include a term of 12 months and bear an annual interest rate of 10.75% and were otherwise in customary form and on fair and customary terms. See Exhibit C to Harris Aff.

22. The Notes provide that upon Defendant's failure to pay when due any obligation or any portion thereof when due, the Defendant shall be liable for a late charge

4

equal to the lesser of 15% per annum or the highest lawful rate per annum, until the delinquent amount is paid. See Complaint, ¶ 27.

23. The Notes also provide that upon Defendant's failure to pay when due any obligation or any portion thereof when due, the Plaintiff, with 10 days notice, may accelerate the sum evidenced by the Notes. See id. at ¶ 28.

24. The Defendant shall be liable for Plaintiff's reasonable attorneys' fees and costs incurred to enforce the Notes. See id. at ¶ 29.

25. The Notes expressly provide that they "may not be changed orally, but only by an agreement in writing signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought." See Exhibit D to Harris Aff.
The Defendant has not (and cannot) produce any such written agreement. Indeed, the Defendant testified that he actually tried to obtain a letter from Fabbricatore but was unsuccessful. See Kunzi Tr., pp. 68-69.

26. The Notes further provide that the Defendant "waives demand, presentment, protest, notice of protest and/or dishonor and all other notices or requirements that might otherwise be required by law." See Exhibit D to Harris Aff.

27. The Notes are governed by Massachusetts law. See Exhibit D to Harris Aff.

28. On October 3, 2002 (the "Petition Date"), CTC commenced their cases under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). See Complaint, ¶5.

29. CTC filed its Amended Joint Plan of Reorganization (the "Plan") on or around November 20, 2003.

5

30. Specifically, the Plan provides for the establishment of the Trust to, among other things, resolve, liquidate and realize upon certain assets as the successor to and representative of the Debtors' estates.

31. These assets include, without limitation, certain causes of action arising under Chapter 5 of the Bankruptcy Code and recovery of loans, advances or other amounts due from any of the Debtors' former employees, and all proceeds from and income earned on any of these assets (the "Retained Actions").

32. On or around June 3, 2003, CTC sent a letter to the Defendant demanding repayment of the outstanding and accrued interest.  See Complaint, ¶31.  The Defendant, however, failed to make any such payments.

33. Consequently, CTC filed suit against the Defendant on October 8, 2003 in the United States Bankruptcy Court for the District of Delaware (the "Delaware Adversary Proceeding").

34. As of the date of the Complaint, the outstanding amount was $397,032.85, plus accrued interest, costs and attorneys' fees.  See Complaint, ¶ 45.  Interest and costs have continued to accrue.

   Respectfully submitted,

**THE CTC LITIGATION TRUST**

By its attorneys,

/s/ Robert L. Harris
William R. Baldiga (BBO #542125)
Robert L. Harris (BBO #644829)
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA  02111

(617) 856-8200

Dated: October 30, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

        Paul M. Glickman, Esquire
        Glickman & Turley
        250 Summer Street
        Boston, MA  02210

        /s/ Robert L. Harris
        Robert L. Harris

# 1461735 v1 - HARRISRL - 024183/0001